289 S.E.2d 748

**STATE of West Virginia**

v.

**Clifford T. CAUDILL.**

**No. 14918.**

Supreme Court of Appeals of West Virginia.

March 30, 1982.

Preiser & Wilson, John W. Swisher and Franklin S. Fragale, Jr., Charleston, for appellant.

Chauncey H. Browning, Atty. Gen., and Robert P. Howell, Asst. Atty. Gen., Charleston, for appellee.

McHUGH, Justice:

This case is before this Court on an appeal from an order of the Circuit Court of Boone County, entered on December 9, 1977, sentencing the defendant, Clifford T. Caudill, to 186 years imprisonment in the West Virginia State Penitentiary at Moundsville. The defendant was convicted on an indictment which charged the crime of armed robbery.[1]

---

1. This Court recently discussed the definitions and development of the different types of robbery in *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981), where we said: "We believe

On this appeal the defendant assigns six errors. It is only necessary, however, for the resolution of this appeal to consider two of the errors assigned: (1) the trial court's admission of evidence of other crimes committed by the defendant; and (2) the testimony of the defendant's accomplices that they had entered pleas of guilty to the charges of armed robbery and kidnapping.

I

The defendant Clifford T. Caudill, Wes Finley, Jr., and William Wesley York robbed the Hawkins Jewelry Store in Madison, West Virginia, on May 30, 1977. The proprietors of the store, Aubrey and Alberta Hawkins, were held at gunpoint during the robbery by Caudill and York. Finley waited in the defendant's car in an alley behind the jewelry store.

After robbing the store, Caudill and York forced Mr. and Mrs. Hawkins to accompany them as they fled. They put Mr. and Mrs. Hawkins in the back seat of the defendant's car and left Madison on a highway known as Corridor G. Shortly thereafter the Hawkins were placed in the trunk of the car and held captive. On June 3, 1977, they were found dead near Jellico, Tennessee.

According to the defendant's brief, on June 30, 1978, Caudill entered pleas of guilty to the first degree murders of Aubrey and Alberta Hawkins in Campbell County, Tennessee. He was given two life sentences to run concurrently with the sentence in this case.

II

Three indictments were returned against the defendant by a Boone County grand jury. The State, however, elected to bring Caudill to trial only on an indictment charging him with armed robbery.

At Caudill's trial the prosecuting attorney began his opening statement by telling the jury about the robbery at the Hawkins

Jewelry Store. He then began to tell the jury about the abduction of Mr. and Mrs. Hawkins. The defense counsel objected. After a short bench conference, the trial judge ruled that evidence relating to the abduction and murder of Mr. and Mrs. Hawkins would be admissible because of the propinquity of such acts to, and their interrelationship with, the robbery charged in the indictment. The prosecuting attorney then continued his opening statement by telling the jury in detail about the kidnappings and murders.

During the course of the defendant's armed robbery trial the State, over vigorous defense objections, introduced a great mass of testimony and evidence relating to the kidnappings and murders. The evidence, among other things, included testimony by Tennessee policemen, testimony by York and Finley, and a confession given by Caudill detailing his part in the abduction and murder of Mr. and Mrs. Hawkins. A major portion of the evidence and testimony taken at Caudill's trial related to the two crimes of kidnapping and murder for which he, ostensibly, was not on trial.

The prosecuting attorney, in his closing argument to the jury, referred repeatedly to the kidnappings and murders. The prosecuting attorney concluded his argument to the jury, and the case, by telling the jury that the State had proved beyond a reasonable doubt that Caudill was guilty of armed robbery as charged in the indictment. He then added, "[N]ot only the one [crime] he is charged with, but a bunch more."

 Evidence relating to a crime that a defendant is accused of committing, other than that charged in the indictment for which he is on trial, is not generally admissible to prove the offense for which the accused is on trial. *State v. Hudson*, 128 W.Va. 655, 37 S.E.2d 553 (1946). There are, however, exceptions to that general rule.

The exceptions permitting evidence of collateral crimes and charges to be admissible against an accused are recog-

that these acts should be called 'aggravated' robbery since they do not relate to whether the

defendant is armed." 168 W.Va. at 711, 285 S.E.2d at 464.

nized as follows: the evidence is admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial.

Syl. pt. 12, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974).

The State argues in the case before us that the extensive evidence relating to the kidnapping and murder of Mr. and Mrs. Hawkins was properly admitted at the defendant's trial under the fourth exception listed in syllabus point 12 of *State v. Thomas, supra.* This Court discussed that exception in *State v. Spicer*, 162 W.Va. 127, 245 S.E.2d 922 (1978). The defendant in *Spicer* was on trial for robbery. The State introduced evidence showing that the defendant stole $3.00 from his victim. However, he also abducted his victim at knifepoint and raped her twice. Evidence of the rapes was admitted at the defendant's trial. The victim testified about the sexual assault. The State also presented two doctors who testified that their examination and tests confirmed the victim's testimony regarding the rape.

In *Spicer* it was "conceded that these criminal acts [the abduction and rape] are so interrelated to the crime charged that they are admissible under the fourth exception to the general prohibition against other criminal act evidence set forth in *State v. Thomas* ...." 162 W.Va. at 131, 245 S.E.2d at 925. The defendant, however, argued that he was denied a fair trial by the excessive use of, and reference to, the evidence of the rape. We held, in the syllabus of that case:

1. Other criminal act evidence admissible as part of the res gestae or same transaction introduced for the purpose of explaining the crime charged must be confined to that which is reasonably necessary to accomplish such purpose.

. . . .

3. Where the prosecution improperly introduces evidence of other criminal acts as part of the res gestae or same transaction beyond that reasonably required to accomplish the purpose for which it is offered, and makes remarks concerning such other crime evidence in argument for the purpose of inflaming the jury, the conviction will be reversed on the ground that the defendant was denied the fundamental right to a fair trial.

*State v. Spicer, supra.* In so holding we observed:

The prosecution in the case at bar ... was not content with merely eliciting the sordid details of the rapes. The opening and closing statements made unnecessary references thereto. The latter statement, in particular, placed improper emphasis on such evidence, and was apparently calculated to inflame the jury .... The rape evidence was admitted indiscriminately, took up much of the trial time, and created a substantial danger of prejudice. This, combined with the remarks of the prosecution, particularly in closing argument, was prejudicial and denied [the defendant] the fundamental right to a fair trial.

162 W.Va. at 133–134, 245 S.E.2d at 926, 927.

While the case before us is very similar to *State v. Spicer*, there is one major difference. In this case it is not conceded that the murders are so interrelated to the crime charged as to come within the fourth exception of syllabus point 12 of *State v. Thomas, supra.* [2] In *Spicer* the abduction and rape occurred "contemporaneous with, as a part of, the crime charged." C. Torcia, *Wharton's Criminal Evidence* 540 (13th ed. 1972). In the case before us the two murders occurred approximately 28 hours after the robbery. In *Spicer* the evidence of the rape and abduction tended to show an element of the crime charged— the force used to commit the robbery. In the case before us the evidence of the

2. The defendant's brief does concede "that evidence of the kidnapping from the jewelry store to a point where the Hawkinses were placed in

the trunk near Twelve Pole could be considered contemporaneous with the crime charged and necessary to explain the crime charged."

murders did not show anything about the armed robbery charged in the indictment.

The evidence relating to the murders in this case was not necessary to show motive, intent, the identity of the person charged or the absence of mistake or accident. The murders were not contemporaneous with the robbery. The murders were not so interrelated with the robbery so as to be "necessary to prove or to explain the crime charged." *Ibid.* The evidence relating to the murders did not tend to establish "a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others." *State v. Thomas, supra.* The introduction of the evidence of the murders at Caudill's robbery trial was highly prejudicial and could serve no purpose but to inflame the jury. The admission of the evidence relating to the murders, crimes to which he subsequently entered pleas of guilty in Tennessee, was, therefore, reversible error.

## III

■ Wes Finley, Jr., and William Wesley York testified for the State at the defendant's trial. Both testified extensively about the events surrounding the crimes, their part in those crimes, the events leading up to the crimes, and the defendant's part in the crimes. York, on direct examination also testified that he had entered pleas of guilty to the robbery and kidnapping of Aubrey and Alberta Hawkins and had been sentenced to fifty years imprisonment.[3] Finley testified on direct examination that he had entered a plea of guilty to the armed robbery at the Hawkinses' Jewelry Store.[4] The defendant assigns this

3. When York first took the stand the following exchange occurred between him and the trial judge:

The Court: All right. Mr. York, before you are asked any questions by the State, you have been indicted in this Court on armed robbery charges and two charges of kidnapping as well as with the charge of murder in the State of Tennessee, is that correct?
A. Yes.
. . . .
The Court: Now, I want to advise you first of all since you are charged jointly in the indictment charging this Defendant with robbery of which he is on trial that you have a right to remain silent if you desire. Do you understand that?
A. Yes, Your Honor.
. . . .
The Court: All right. Now, do you desire to answer the questions at this time?
A. Yes, Your Honor.
On direct examination the following exchange occurred between York and the prosecuting attorney:
Q. You have been charged in this Court with armed robbery, is that right?
A. Yes, sir.
Q. Have you entered a plea to this charge?
A. Yes, sir.
Q. What plea did you enter?
A. Guilty.
Q. Have you been sentenced on that charge?
A. Yes, sir.
Q. You have also been charged with kidnapping of Alberta Hawkins, is that correct?
A. Yes, sir.
Q. Have you entered a plea to this charge?
A. Yes, sir.
Q. What plea did you enter to this charge?
A. Guilty.

Q. You have been charged with the kidnapping of Aubrey Hawkins, is that right?
A. Yes, sir.
Q. Have you entered a plea to this charge?
A. Yes, sir.
Q. What plea did you enter to this charge?
A. Guilty.
. . . .
Q. And you have pleaded guilty to all three of those charges?
A. Yes, sir.
Q. What sentence was imposed on you?
A. 50 years on each count.
The State did not make any further reference to York's pleas of guilty or to his sentence in the rest of the trial. We note that, according to the defendant's brief, York also entered pleas of guilty to murder charges on June 30, 1978, in Campbell County, Tennessee.

4. On the direct examination of Wes Finley, Jr., the following exchange occurred between Finley and the prosecuting attorney:
Q. Wes, you are one of the three people charged with the robbery of the Hawkins Jewelry up here, Aubrey Hawkins and Alberta Hawkins, aren't you?
A. Yes, sir.
Q. You and ... William York, and he is called Willie, and Clifford Caudill?
A. Yes, sir.
Q. You are one of those three?
A. Yes, I am.
Q. Have you already entered a plea of guilty to that charge?
A. Yes, I have.
Q. And you have been sentenced by this Court, have you not?
A. Yes, I have.

testimony as error. The defendant argues that the admission of testimony by Finley and York that they had entered pleas of guilty and been sentenced for the same crime for which he was on trial was error. He cites *State v. Price*, 114 W.Va. 736, 174 S.E. 518 (1934), and *State v. Bennett*, 157 W.Va. 702, 203 S.E.2d 699 (1974), as support for his argument.

In *State v. Price, supra*, the defendants were on trial for murder. During the trial one of the defendants withdrew his plea of not guilty and entered a plea of guilty. He was thereupon called as a witness for the State. "The only material thing that was shown by this witness, over the objection of the defense, was that he had pleaded guilty to his part in the burning and was now serving a life sentence therefor." 114 W.Va. at 741, 174 S.E. at 520. This Court held such testimony to be error: "The declarations or admissions of a participant in a conspiracy, made after the conspiracy has terminated, are not admissible in evidence against a coconspirator of the person making the declarations or admissions." Syl. pt. 1, *State v. Price, supra*.

In *State v. Bennett, supra*, the defendant was on trial for attempted armed robbery. The defendant's accomplice, testifying as a State's witness, volunteered from the stand that he had entered a plea of guilty to a charge arising out of the same transaction for which the defendant was on trial. The defendant moved for a mistrial and the motion was denied. This Court reversed, relying on *State v. Price, supra*.

This Court, however, in *State v. Bennett*, did not discuss the intervening case of *State v. Loveless*, 140 W.Va. 875, 87 S.E.2d 273 (1955). In *Loveless* the defendant was on trial as an accessory before the fact to

murder. The principals testified against the defendant at his trial and admitted that they had been convicted and sentenced. This Court said:

> Though it is unnecessary to prove the conviction of the principals, we do not think such testimony was prejudicial to the defendant, as the witnesses, by their own admission of conviction and sentence to the penitentiary, placed the stigma of criminality on themselves. Furthermore, the witnesses had testified to the circumstances surrounding the crime and supplemented such testimony by their statements as to the punishment inflicted on them. We find no error in permitting Puckett and Ford to testify that they had been convicted of the principal crime and sentenced to the state penitentiary.

140 W.Va. at 884, 87 S.E.2d at 279.

This Court next considered the issue in *State v. Ellis*, 161 W.Va. 40, 239 S.E.2d 670 (1977). The situation in that case was much the same as that in *State v. Bennett, supra*, and the case was reversed on the basis of syllabus point 1 of *State v. Price, supra*. In *Ellis* the prosecuting attorney stated in his opening statement that a witness had already pleaded guilty to an indictment arising from the same transaction. The witness was called and so testified. A defense motion for a mistrial was denied. This Court, in reversing, said: "We find that the intent of the prosecution was to introduce Mr. Browning's plea of guilty *for general purposes* as a co-conspirator after the conspiracy had ended." (Emphasis in original). 161 W.Va. at 41–42, 239 S.E.2d at 672. This Court found that the introduction of the evidence was deliberate and that the prosecution gave the evidence "considerable emphasis." *Id.* [5]

Q. And you are now in the Boone County Jail?
A. Yes, sir.
The State did not make any further reference to Finley's pleas of guilty or to his sentence in the rest of the trial.

5. In *Ellis*, however, this Court did overrule a portion of *State v. Bennett, supra*:
> Syllabus point 5 of *State v. Bennett* [157] W.Va. [702], 203 S.E.2d 699 (1974) is overruled to the extent that it does not place within the trial court's discretion the question

of whether appropriate jury instructions can cure the inadvertent admission into evidence of an alleged co-conspirator's or accomplice's acknowledgement of his conviction of or plea of guilty to the same offense for which the defendant is being tried.

Syl. Pt. 2, *State v. Ellis, supra*. Syllabus point 5 of *State v. Bennett, supra*, provided:
> Where a State's witness, who is an alleged accomplice of the accused makes an unsolicited acknowledgement of his conviction for the criminal incident on which the accused is

In *State v. Adkins*, 162 W.Va. 815, 253 S.E.2d 146 (1979), this Court overruled syllabus point 1 of *State v. Price, supra*, and syllabus point 2 of *State v. Bennett, supra*. In *Adkins* the defendant was on trial for murder. His accomplice testified in detail about the crime. The opinion states:

> We find that the appellant's citation to syllabus point 2 of *State v. Price and Bruce* ... as quoted in *State v. Bennett* ... for the proposition that a defendant cannot be convicted on the admission or confession of a coconspirator after the conspiracy has ended to be inappropriate to the facts of this case because the quoted syllabus point is overly-broad....

162 W.Va. at 820, 253 S.E.2d at 149–150.

This Court then overruled syllabus point 1 of *State v. Price, supra*, and limited that case thusly:

> The meaning of *State v. Price and Bruce, supra*, and *State v. Bennett, supra*, is that the admission or confession of an accomplice either by way of a plea of guilty to the crime or in any other out-of-court statement cannot be introduced in evidence under some theory of agency as an admission against interest binding upon all participants in the conspiracy .... Consequently, while an admission or confession alone cannot be introduced into evidence, there is absolutely no prohibition against testimony by an accomplice witness implicating the defendant in the crime when the defendant has an opportunity to cross-examine the accomplice and the accomplice is available in court for that purpose or his testimony and cross-examination is appropriately preserved in some other manner."

162 W.Va. at 820, 253 S.E.2d at 150. The defendant in *State v. Adkins, supra*, took syllabus point 1 of *State v. Price, supra*, to its logical conclusion and argued that it prohibited the mere testimony of an accomplice because such testimony is of the nature of a confession after the conclusion of the conspiracy. *Adkins* rejected that argument completely. *Adkins* does not, however, directly address the situation we have in the case before us. *Adkins* does limit *State v. Price, supra*, to the facts of the case, i.e., that an accomplice cannot testify solely to his plea or conviction to show guilt by association. *Adkins* specifically allows the accomplice to offer detailed testimony relating to the facts of the crime. The opinion, however, does not address the question of whether such an accomplice can, during his direct testimony relating to the facts of the crime, admit to having entered a plea of guilty to the crime or to having been found guilty of the crime.

The continuing validity of *State v. Bennett, supra* on this point is very doubtful as both the syllabus points in that case relating to this issue have been expressly overruled. One commentator has noted that the overruling of *State v. Bennett, supra*, in *State v. Ellis, supra*, has brought this State in line with "the well recognized rule in federal courts that the jury may be informed of a co-defendant's guilty plea, provided the proper cautionary instructions are given." Cleckley, *Handbook on Evidence for West Virginia Lawyers* 135 (1979 Supplement). That federal rule is best summarized in *United States v. Chamley*, 376 F.2d 57 (7th Cir.), *cert. denied*, 389 U.S. 898, 88 S.Ct. 221, 19 L.Ed.2d 220 (1967):

> The Government is generally permitted to bring out the criminal record of its witnesses on direct examination. 'The matter of informing court and jury about information of such clear relevance as the criminal record of a witness called by the prosecution is not something which is to be reserved for the pleasure and strategy of the defense.' *United States v. Freeman*, 302 F.2d 347, 350 (2d Cir. 1962), cert. denied, 375 U.S. 958, 84 S.Ct. 448, 11 L.Ed.2d 316 (1963). The jury may also be apprised of the fact that a co-defendant has pleaded guilty, either by instructions from the court, *United States v. Dardi*, 330 F.2d 316, 332–333 (2d Cir.), cert. denied, 379 U.S. 845, 85

standing trial, and such occurrence is brought to the attention of the trial court by a timely motion, a manifest necessity beyond the control of the court arises, and a refusal to grant a mistrial on such occurrence is reversible error.

S.Ct. 50, 13 L.Ed.2d 50 (1964), or by the testimony of a Government witness, *United States v. Aronson*, 319 F.2d 48, 51 (2d Cir.), cert. denied, 375 U.S. 920, 84 S.Ct. 264, 11 L.Ed.2d 164 (1963). Cf., *United States v. Jannsen*, 339 F.2d 916, 919 (7th Cir. 1964). 'The claim that it was improper for the government to bring out on direct examination of its key witnesses that they had already pleaded guilty to the conspiracy is not convincing. The proponent of a witness need not allow such information damaging to his credibility to be first established on cross-examination ....' *United States v. Mahler*, 363 F.2d 673, 678 (2d Cir. 1966).

376 F.2d at 60–61.

■ A guilty plea made by an accomplice cannot be used as an attempt to show guilt by association. Testimony having that intent and so limited as to achieve that intent is error. *State v. Price, supra.* However, we here deal with the situation where the testimony regarding the plea is but a small part of an accomplice's testimony, which testimony is general and extensive in nature. The concern, in this situation, is that the jury may misinterpret the purpose for which the testimony is offered. That is why federal courts require a limiting instruction. *See infra.*

*State v. Loveless, supra*, was cited in a case from Oregon which is directly on point. In *State v. Cole*, 252 Or. 146, 448 P.2d 523 (1968), the defendant was on trial for conspiring to commit cattle rustling. The State called two of the defendant's co-conspirators and on direct examination asked them about their convictions for the crime with which the defendant was charged. After careful consideration of precedent the Oregon Supreme Court said:

It is apparent from the objected-to testimony that the pleas of guilty were not introduced as part of the state's case to prove the guilt of the defendant. The question is was the testimony for another proper purpose, and, if so, was it so prejudicial to the defendant as to outweigh its probative value for the other purpose and therefore become inadmissible. The purpose of the co-conspirators'

testimony was to give the facts and circumstances of the crime. The testimony as to their pleas of guilty gave the circumstances under which they were testifying, and their status with regard to the charge, and went to their credibility as witnesses for the state. The testimony of guilt was not again referred to in the remainder of the testimony nor in closing argument. We ... hold that the prejudice to the defendant, if any, was rendered harmless when the co-conspirators' guilt was established by their testimony which also implicated the defendant. This is consistent with the cases cited from other jurisdictions which all permit the evidence of a plea of guilty by a co-defendant if it is clearly not for the purpose of proving the guilt of the defendant and is for another proper purpose.

448 P.2d at 527–528. The question of the credibility of the defendant is clearly a proper purpose. *See United States v. Chamley, supra.*

When the prosecution tenders as its witness a person with a criminal record, it sometimes starts by eliciting this history. (The defense sometimes does the same when offering such a witness on its part.) The interrogation should not be regarded as an impeachment of the prosecution's own witness ... nor can the defense claim a right to bring out the damaging facts for the first time in a perhaps more dramatic way on cross-examination. This 'is not something which is to be reserved for the pleasure and strategy of the defense.' *United States v. Freeman*, 302 F.2d 347, 350 (2d Cir. 1962). The jury are entitled to the information for its bearing on the value of the witness' testimony, and the prosecution might indeed on occasion suffer unfairly in the estimation of the jury for attempting to conceal the criminal record if it did not come forward with it.

*Commonwealth v. Cadwell*, 374 Mass. 308, 312, 372 N.E.2d 246, 249 (1978).

■ From these cases a clear rule regarding the situation presented by this case may be formulated. In a criminal trial an accomplice may testify as a witness on behalf of the State to having entered a plea of guilty to the crime charged against

a defendant where such testimony is not for the purpose of proving the guilt of the defendant and is relevant to the issue of the witness' credibility. The failure by a trial judge to give a jury instruction so limiting such testimony is, however, reversible error. An example of such an instruction is found in *United States v. Aronson, supra,* at 51:

> I want to tell you again the fact that such pleas were entered does not mean that the remaining three defendants on trial ... are guilty with them. The pleas are not evidence to the defendants remaining on trial that they are guilty, or the crime charged in the indictment was committed.
>
> These pleas do not give rise to any inference as to the guilt of the remaining defendants here on trial. The guilt or innocence of the defendants still on trial must be determined solely by you, solely by the evidence introduced in the trial of this case.

Such an instruction was not given in Caudill's case. If such testimony is admitted into evidence the trial judge is required to give an instruction limiting the testimony to the issue of the witness-accomplice's credibility.

For the reasons stated above the judgment of the Circuit Court of Boone County is reversed and this case is remanded to that court for further proceedings in accordance with this opinion.

Reversed and Remanded.