## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

November 20, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-1149** (Raleigh County 04-F-220)

**Shawn D. Stewart,**
**Defendant Below, Petitioner**


## MEMORANDUM DECISION

Petitioner Shawn D. Stewart, by counsel Timothy P. Lupardus, appeals the October 6, 2014, "Resentencing Order" entered by the Circuit Court of Raleigh County following a 2008, jury trial. Petitioner was sentenced to twenty-five years in prison for first degree robbery, one to five years in prison for conspiracy, and two to ten years in prison for malicious assault, with all terms to run consecutively. Respondent State of West Virginia, by counsel David A. Stackpole, filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual Background

Petitioner's convictions stemmed from the beating and robbery of Donald Mabes in 2003. The evidence at petitioner's jury trial revealed that on December 30, 2003, Mabes took petitioner, co-defendant Darrell Cadle, and co-defendant Kristina Brooks[1] in his truck with the intention to purchase drugs. Mabes testified that, at some point along the way, he changed his mind and decided not to take the trio to their requested location. As Mabes pulled into the driveway of Cadle's father, the three began to beat Mabes. The beating continued after Mabes exited his truck, however, Mabes was able to get away to call for help. Mabes was taken to the hospital, and ultimately required facial reconstruction surgery as a result of the beating. Additionally, Mabes testified that, at the time of the beating, he had fifty dollars in his wallet, and that he saw petitioner take the money from his wallet and throw the wallet onto the floor.[2]

---

[1] Petitioner was Brooks's boyfriend at the time of the offenses.

(continued . . .)

1

Sergeant P.A. Blume testified that he interviewed Cadle and Brooks after assuming the investigation from Officer Chuckie Smith.[3] Over petitioner's hearsay objection, the circuit court permitted Sergeant Blume to testify to what Brooks and Cadle told him regarding the incident.[4] The circuit court allowed the testimony based on the State's assertion that it was not being offered for its truth, but rather for Sergeant Blume to explain the chronology of actions that he took in the investigation. According to Sergeant Blume, Brooks told him that "all three defendants engaged in the beating in some part." As for Cadle's statement, Sergeant Blume testified that Cadle "put the severity of the beating on [petitioner] who was basically what he said was the ringleader, dealt out the harshest of the beating." Also, over petitioner's objection, the circuit court permitted the State to recall Sergeant Blume to testify that, in a March 14, 2008, statement at the jail, Brooks said that petitioner told her after the beating something to the effect that, "I got some money now and we need to go." On cross-examination, Sergeant Blume admitted that neither Brooks nor Cadle implicated petitioner in the robbery in their original statements, but only implicated him in the beating.

Brooks also testified on behalf of the State.[5] She admitted that she was convicted of malicious wounding and conspiracy related to the beating of Mabes and that petitioner and Cadle were the co-conspirators. However, she indicated that, in late 2003 and early 2004, she drank heavily, abused drugs, and did not remember that time frame very well.

Petitioner did not testify on his own behalf, but called Cadle as a witness. Cadle's trial testimony differed from what he had told the police. Cadle testified that when Mabes pulled back

---

[2] Mabes admitted during cross-examination that he did not tell the police that he saw petitioner take the money.

[3] Officer Smith was killed in the line of duty prior to completing his investigation in the present matter. Officer Smith's death was the subject of a separate criminal prosecution in the Circuit Court of Raleigh County. Two of the jurors who deliberated in petitioner's trial had also served as jurors in the trial of Thomas Leftwich, Officer Smith's alleged killer. Petitioner raises the inclusion of these jurors on his jury as one of his assignments of error in this appeal. However, petitioner fails to (1) articulate how these jurors were biased or (2) cite any legal authority supporting his argument. Therefore, we decline to address petitioner's argument on this issue. *See*, in part, W.Va.R.App.P. 10(c)(7) ("The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.").

[4] Brooks and Cadle both pled guilty to malicious wounding and conspiracy prior to petitioner's trial.

[5] The circuit court instructed the jury regarding Rule 404b) evidence pursuant to *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994), during Brooks' testimony on direct examination and prior to the State's cross-examination of Cadle.

2

into the residence after refusing to take the trio to buy drugs, petitioner went into the bathroom. Cadle testified that he alone, not petitioner or Brooks, was responsible for beating Mabes. Cadle testified at petitioner's trial that he lied about the incident to the police.

During the State's cross-examination, Cadle admitted to having lied in the past to get himself out of trouble, both under oath and to the police. Cadle further admitted that it was not until petitioner's January 27, 2007, trial regarding a separate beating incident involving a different victim that he professed petitioner's innocence. The following exchange occurred during the State's cross-examination:

Prosecutor:    And at that time you said you didn't want to an innocent man convicted. Do you remember saying that?

Cadle:          Yes.

Prosecutor:    He got convicted anyway though, didn't he?

Cadle:          Somewhat.

Prosecutor:    Of conspiracy to commit a felony is his conviction in that. The jury didn't believe you either, did they?

Petitioner objected to the State soliciting a reference to his prior conviction from the 2007, trial involving a different victim. The circuit court sustained petitioner's objection, but gave no limiting or cautionary instruction to the jury. The State's cross-examination continued with the following exchange:

Prosecutor:    He [petitioner] got convicted of it, You're guilty of it.

Cadle:          He [petitioner] shouldn't have been convicted of it.

Prosecutor:    You're guilty of it. And Kristina Brooks wasn't involved in that. The conspiracy was with him [petitioner], correct?

Cadle:          No, it wasn't.

Prosecutor:    That's what the jury said, right?

Also, over petitioner's objection and following an in camera hearing, the circuit court permitted the State to call Deputy Bobby Stump to testify. Deputy Stump was not on the State's witness list. He was assigned to assist in the transportation of incarcerated witnesses for petitioner's present trial. Deputy Stump testified that he heard Brooks tell petitioner that she

loved him and "I got your back."[6] Petitioner argues that despite the court's ruling that this testimony was admitted to impeach Brooks' prior testimony, the State used it as substantive evidence of petitioner's guilt by arguing the following in closing argument:

> The defense says there's no conspiracy. Really? They acted together that night and they continue to do so to this day. Kristina Brooks, "I love you, baby. I got your back." The conspiracy continues.

Petitioner also challenges the State's closing argument inasmuch as the prosecutor referenced the prior convictions of Cadle and Brooks, and according to petitioner, improperly used them to imply his guilt as well. The prosecutor argued in closing, "So now you're left with the who. And the who is pretty easy. The who consists of the guilty Kristina Brooks, the guilty [Darrell Cadle] and you're going to find [petitioner] guilty as well."

The jury convicted petitioner of first degree robbery, malicious assault, and conspiracy to commit a felony, for which the circuit court sentenced petitioner to consecutive prison terms of twenty-five years, two to ten years, and one to five years, respectively. This appeal followed the entry of the court's "Resentencing Order" on October 6, 2014.

**Discussion**

Petitioner raises five assignments of error on appeal. First, petitioner argues that the circuit court erred by admitting evidence of Brooks' and Cadle's convictions, and then by allowing the State to argue that petitioner was guilty by his association with them.[7] Petitioner argues that the State's tactics violate syllabus point three of *State v. Caudill,* where we held that

> In a criminal trial an accomplice may testify as a witness on behalf of the State to having entered a plea of guilty to the crime charged against a defendant where such testimony is not for the purpose of proving the guilt of the defendant and is relevant to the issue of the witness-accomplice's credibility. The failure by a trial judge to give a jury instruction so limiting such testimony is, however, reversible error.

170 W.Va. 74, 289 S.E.2d 748 (1982), *modified sub nom. State v. Flack*, 232 W.Va. 708, 753 S.E.2d 761 (2013).[8]

---

[6] During her own testimony, Brooks was asked about making a comment to petitioner before the trial. She admitted that she told him she loved him as she passed the holding cell, but denied saying she "had his back."

[7] We note that petitioner objected to the admission of evidence of the co-defendants' convictions during their testimony, but did not object to the State's use of this evidence in its closing argument.

[8] Petitioner's trial took place in 2008, prior to our decision in *Flack*, where we held that (continued . . .)

4

Upon our review, we find no error. Brooks testified that she was incarcerated for two counts of malicious wounding and one count of conspiracy, prompting the circuit court to give the proper limiting instruction. Brooks then testified that one of the malicious wounding convictions and the conspiracy related to the Mabes incident.

Petitioner then called Cadle as his own witness and elicited testimony from him that he was serving a jail sentence for two counts of malicious wounding and one count of conspiracy. Petitioner further questioned Cadle regarding his guilty plea and whether he acted alone in beating Mabes, to which Cadle testified that he was the one who beat Mabes, and that petitioner played no part. As respondent correctly states, petitioner was the one to elicit evidence of Cadle's convictions. Prior to the State's cross-examination of Cadle, the circuit gave the proper limiting instruction. Then, the State proceeded to impeach Cadle regarding his claim that he acted alone in beating Mabes by referring to Cadle's conspiracy conviction. Accordingly, under these facts, we cannot find that the State's use of the co-defendants' prior convictions violates our decision in *Caudill* and warrants reversal of petitioner's convictions.

As for petitioner's claim that the State improperly argued that petitioner was guilty by association in its closing argument, petitioner concedes that this alleged error has not been properly preserved for appeal. Therefore, we must determine whether the State's closing constituted "plain error." We have held that "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). In the State's closing argument in the present case, the State recounted the details of the crimes, which, importantly, included the testimony of the victim. One of the elements of the State's closing focused on "who" was involved in the crimes. As one of those alleged crimes was conspiracy, we do not find it improper that the State referred to the conduct of petitioner's alleged co-conspirators, Brooks and Cadle. Under the facts of this

---

[a]n accomplice who has entered a plea of guilty to the same crime charged against the defendant may testify as a witness on behalf of the State. However, if the jury learns of the accomplice's guilty plea, then upon the motion of the defendant, the trial court must instruct the jury that the accomplice's plea of guilty cannot be considered as proving the guilt of the defendant, and may only be considered for proper evidentiary purposes such as to impeach trial testimony or to reflect on a witness' credibility. The failure of the trial court, upon request, to give such a limiting jury instruction is reversible error. To the extent that Syllabus Point 3 of *State v. Caudill,* 170 W.Va. 74, 289 S.E.2d 748 (1982) is inconsistent, it is hereby modified.

Syl., 232 W.Va. at 710, 753 S.E.2d at 763.

The present case does not turn on *Flack's* modification of *Caudill*, that is, whether petitioner requested the limiting instructions regarding Brooks's and Cadle's testimony. As respondent notes, the circuit court gave the required instructions sua sponte.

5

case, we do not find plain error in the State's reference to these co-defendants' conspiracy convictions, given their trial testimony that petitioner played no part in the crimes. As discussed above, such evidence was properly admitted to impeach these witnesses, and therefore, it was not plain error for the State to refer to it in its closing.

Petitioner's second assignment of error is that the circuit court should not have permitted Sergeant Blume to testify to the substance of Brooks's and Cadle's statements on the basis that it was being offered to show the reasons for the officer's next steps in his investigation, rather than for the truth of those statements.[9] Petitioner claims that the State's basis for asking these questions was a mere pretext to get otherwise inadmissible hearsay before the jury.

"A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 2, *State v. Cecil*, 221 W.Va. 495, 655 S.E.2d 517 (2007) (quoting Syllabus Point 4, *State v. Rodoussakis,* 204 W.Va. 58, 511 S.E.2d 469 (1998)). With respect to the admission of out-of-court statements, we have held as follows:

> Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

Syl. Pt. 1, *State v. Maynard*, 183 W.Va. 1, 393 S.E.2d 221 (1990). In the present case, the State contended at trial that the evidence of Brooks's statement was for the purpose of showing "why [Sergeant Blume] took the actions he took." Petitioner claims that this was the end of the State's questioning; however, the record reveals otherwise. The State's further questioning of Sergeant Blume revealed that, after learning the details of the alleged beating from Brooks and Cadle, the officer obtained a search warrant. The State further inquired about the evidence obtained as a result of that warrant. Accordingly, petitioner fails to demonstrate that the circuit court abused its discretion by allowing Sergeant Blume to testify to Brooks's and Cadle's statements.

Petitioner's third assignment of error focuses on Deputy Stump's testimony that Brooks told petitioner, "I got your back," when she passed petitioner's holding cell on the morning of trial.[10] Petitioner states that it was plain error[11] for the circuit court to permit the State to use

---

[9] At trial, petitioner objected when the State asked Sergeant Blume about Brooks's statement, but did not object with respect to Cadle's statement.

[10] Brooks testified that she still loved petitioner, admitted telling him that she loved him as she passed the holding cell, but denied saying, "I got your back." Petitioner concedes that Deputy Stump's testimony was properly permitted to impeach Brooks's denial of this latter statement.

Brooks's alleged statement in closing argument as substantive evidence of petitioner's guilt, rather than for impeachment only. We disagree. Upon our review, it is clear that challenged statements in the State's closing argument were made to attack Brooks's credibility by showing she was biased in favor of petitioner. Therefore, we cannot find plain error as a result of the State's closing argument.

Fourth, petitioner argues that the State improperly admitted evidence of petitioner's prior convictions through its cross-examination of Cadle, when petitioner did not place his own character into evidence. As background, petitioner had been convicted of conspiracy to commit a felony in separate beating incident, also involving Cadle.[12] In the other case, Cadle testified to the effect that petitioner played no part in that crime. During its cross-examination of Cadle in the present case, the State referred to Cadle's prior testimony in that other case in which Cadle claimed that petitioner was innocent, and attempted to impeach Cadle by pointing out that the jury in that case did not believe him as evidenced by the fact that petitioner was convicted in that case.

Upon our review, we find that the circuit court did not err in allowing evidence of petitioner's other conviction. We have held that

> [t]he standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. LaRock*, 196 W.Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996) (citation omitted). "In reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence, in this case the prosecution, maximizing its probative value and minimizing its prejudicial effect." *State v. McGinnis*, 193 W.Va. 147, 159, 455 S.E.2d 516, 528 (1994).

In the present case, on December 14, 2005, and February 14, 2007, the State filed notices of its intent to introduce evidence of other crimes. The circuit court held a hearing, at which the State claimed that the specific purpose of the 404(b) evidence – the other beating incident, which had resulted in a conviction – was to show an absence of mistake, or a pattern and plan. The

---

[11] Petitioner failed to object during the State's closing; therefore, we review this alleged error for plain error. *See Miller, supra.*

[12] According to respondent's brief, petitioner and Cadle were actually involved in three separate beating incidents involving different victims and taking place within a short timeframe, December 30, 2003 (the Mabes beating), January 1, 2004, and January 4, 2004.

circuit court found that the prior conviction was relevant and that there was no unfair prejudice if the evidence is used "to demonstrate a specific plan or course of action on behalf of [petitioner] and also to show that there was no mistake on his part, that there was no instance of a heat-of-passion incident." Petitioner requested limiting instructions and the circuit court granted the request. Accordingly, we find no error in the State's cross-examination of Cadle, which revealed petitioner's conspiracy conviction in a different beating incident.

In petitioner's final assignment of error, he argues that he was denied a fair trial as a result of the cumulative effect of the circuit court's errors. *See* Syl. Pt. 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972) ("Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error."). As we have found petitioner's alleged errors to be without merit, we must reject his claim of a cumulative effect of errors.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 20, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

8