371 S.E.2d 64

**STATE of West Virginia**

v.

**Betty MULLENS.**

**No. 17701.**

Supreme Court of Appeals of West Virginia.

June 22, 1988.

---

Franklin D. Cleckley, Morgantown, Richard G. Rundle, Rundle & Rundle, Pineville, for Mullens.

Charles G. Brown, Atty. Gen., Charleston, for State.

BROTHERTON, Justice:

Betty Mullens appeals her conviction by a Wyoming County jury of being an accessory before the fact to first degree murder; being an accessory before the fact to malicious wounding; and conspiracy to commit first degree murder. Mullens assigns as error the admission of an alleged accomplice's confession and the admission of an alleged accomplice's guilty plea. Because we agree with the appellant that the admission of the alleged accomplice's confession and guilty plea was error, we reverse the judgment of the Circuit Court of Wyoming County and remand for a new trial.[1]

In January 1984 the appellant, Betty Mullens, and her husband, Roger Mullens, were the proprietors of the Midway, a small tavern in Pineville, West Virginia. The appellant operated the Midway during the day and became acquainted with some of the regular patrons. The Mullens employed Rusty Candler as a bartender at the Midway. Candler and Roger Mullens were similar in appearance: they had similar builds, both had long brown hair, and both wore beards.

1. Because we reverse on the confession and guilty plea issues, we do not address other errors assigned by Mullens.

In addition to operating the Midway, Roger Mullens worked the late night shift at a local mine. After completing his shift at the mine, Mullens customarily went to the Midway to help close the bar. As part of his nightly routine, Mullens seated himself in front of a window on a bar stool behind the cash register to count the money. However, on January 28, 1984, Roger Mullens decided to play pool and asked Candler to count the money. As Rusty Candler sat at Mullens' usual spot at the bar behind the cash register counting the money, a bullet came through the window and struck Candler in the head, killing him. The police determined that the bullet had been fired from a high-powered 30.06 rifle shot from the top of a cliff located across the street from the Midway. Thirteen days later, on February 9, 1984, Roger Mullens was shot in the arm as he attempted to enter his van outside his home. Again there was evidence that a high-powered rifle had been used.

A police investigation of the two shooting incidents led to the arrest of Russell Reed and to charges that the appellant had hired Russell Reed to kill her husband, Roger Mullens. Russell Reed was convicted of the first degree murder of Rusty Candler. The appellant was indicted on charges of (1) being an accessory before the fact to murder in the first degree of Rusty Candler; (2) being an accessory before the fact to the malicious wounding of Roger Mullens; and (3) conspiring with Russell Reed, John Pizzino, Jr. and Gary Cline to commit murder in the first degree. John Pizzino, Jr. was the alleged lover of the appellant, although any such relationship was denied by the appellant at trial. Gary Cline figures into the scenario as a potential enemy of Roger Mullens following Mullens' disapproval of Cline's romantic relationship with his daughter.

At trial, the appellant admitted marital problems, many stemming from admitted

physical abuse by her husband, but denied that she had plotted to kill him. Roger Mullens even rejected the idea that the appellant was part of a murder-for-hire scheme against him. The Wyoming County jury convicted the appellant on all three counts of the indictment.

I.

The appellant argues first that the trial court erred in admitting the confession of her alleged accomplice, Russell Reed. The appellant was tried subsequent to Russell Reed's conviction of first degree murder. At the appellant's trial, the State called Russell Reed as a witness. Reed, however, refused to answer any questions on the ground that he was invoking the Fifth Amendment privilege against self-incrimination. Despite warnings from the trial judge that he was not entitled to invoke the Fifth Amendment privilege against self-incrimination, Reed continued to refuse to answer questions. The State, however, proceeded to question Reed from a statement he had given to the police in which he admitted his guilt and implicated the appellant. The appellant argues that Reed's invocation of the Fifth Amendment privilege against self-incrimination effectively denied her of her Sixth Amendment right to confront the witness and challenge the accuracy and credibility of such statements.

■ The Sixth Amendment guarantees an accused the right to confront the witnesses against him. U.S. Const.amend. VI.[2] The Sixth Amendment right of confrontation includes the right of cross-examination. *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). The Sixth Amendment right of an accused to confront the witnesses against him is a fundamental right made obligatory on the States by the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).[3]

---

**2.** The Sixth Amendment provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.

**3.** *See also* syl. pt. 1, *State v. Blair,* 158 W.Va. 647, 214 S.E.2d 330 (1975): "The fundamental right to confront one's accusers, which contemplates the opportunity of meaningful cross-examination, is guaranteed by Article III, Section 14 of the West Virginia Constitution." Article

In *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), the United States Supreme Court considered the Sixth Amendment confrontation right of an accused, as applied to an out-of-court statement by a codefendant. In *Lee* the petitioner and her codefendant were tried jointly at a bench trial at which neither defendant testified. The trial judge relied on the codefendant's confession to the police in finding the defendant guilty. As in this case, the issue was whether admission of the codefendant's confession violated the defendant's Sixth Amendment confrontation right.

The Supreme Court began its analysis with a review of the Sixth Amendment right of confrontation. The Court noted that one function of the confrontation right is to insure fairness, but went on to say that the primary function of the right of confrontation and cross-examination is to promote reliability in criminal trials. 476 U.S. at 540, 106 S.Ct. at 2062.[4] The Court then restated its longstanding view that accomplices' confessions that incriminate defendants are presumptively unreliable. *Id.* at 541, 106 S.Ct. at 2063. Such a confession is hearsay subject to all the dangers of hearsay generally. Moreover, statements of a codefendant about what the defendant said or did are less credible than ordinary hearsay evidence because of the strong motivation of the codefendant to shift the blame to the defendant and exonerate himself. *Id.* at 541, 106 S.Ct. at 2062; *see Bruton v. United States,* 391 U.S. 123, 140–42, 88 S.Ct. 1620, 1630–31, 20 L.Ed.2d 476, 488 (1968) (White, J., dissenting).

The *Lee* Court noted its earlier decision in *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), which involved facts very similar to those in the case before us. In *Douglas,* the petitioner and an alleged accomplice, Loyd, were tried separately on charges of assault with intent to murder. Loyd was tried first and convicted. The State then called Loyd as a witness at petitioner's trial. Loyd, however, refused to answer any questions concerning the alleged crime, relying on the Fifth Amendment privilege against self-incrimination. Thereafter, the State questioned Loyd from an alleged confession made by Loyd which implicated the petitioner. As in the instant case, Loyd repeatedly refused to answer, but the State continued to question him until the entire statement had been read. The petitioner in *Douglas* argued that this procedure violated his rights under the Confrontation Clause of the Sixth Amendment as applied to the States.

The Court reasoned that:

Although the Solicitor's reading of Loyd's alleged statement, and Loyd's refusal to answer, were not technically testimony, the Solicitor's reading may well have been the equivalent in the jury's mind of testimony that Loyd in fact made the statement; and Loyd's reliance upon the privilege created a situation in which the jury might improperly infer both that the statement had been made and that it was true.

*Id.* at 419, 85 S.Ct. at 1077. The Court, therefore, concluded that the petitioner's inability to cross-examine Loyd as to the alleged confession plainly denied him the right of confrontation guaranteed by the Sixth Amendment. *Id.*[5]

III, section 14 of the West Virginia Constitution provides that in trials of crimes and misdemeanors the accused shall be "confronted with the witness against him." W.Va. Const. art. III, § 14.

**4.** Quoting from its decision in *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489, 497 (1970), the Court explained that confrontation

(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury;

(2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth";

(3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness making his statement, thus aiding the jury in assessing his credibility.

*Id.,* 476 U.S. at 540, 106 S.Ct. at 2062 (footnote omitted).

**5.** Three years later in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court considered the effect of a limiting instruction where, in a joint trial, the trial court admitted the confession of a

The *Lee* Court noted that the holding in *Douglas* "was premised on the basic understanding that when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination." 476 U.S. at 541, 106 S.Ct. at 2062–63. The Court then observed that the facts in the case before it were strikingly similar to *Douglas*. In both cases the state attempted to use a hearsay confession of an alleged accomplice as substantive evidence under circumstances which provided the accused with no opportunity to cross-examine the declarant.

The *Lee* Court concluded that the introduction of such confessions, absent an opportunity for cross-examination, necessarily threatens the truthfinding function of the Confrontation Clause. The Court, however, recognized that the presumption of unreliability surrounding confessions of accomplices may be rebutted by a showing of sufficient independent "indicia of reliability," but held that absent such a showing "a codefendant's confession inculpating the accused is inherently unreliable and convictions supported by such evidence violate the constitutional right of confrontation." 476 U.S. at 546, 106 S.Ct. at 2065. Concluding that the codefendant's confession did not bear sufficient indicia of reliability to rebut the presumption of unreliability, the Court concluded that the petitioner's confrontation rights had been violated.[6]

codefendant which implicated the defendant. In *Bruton* the petitioner and Evans, a codefendant, were tried together and convicted of armed postal robbery. At trial Evans did not testify, but a postal inspector testified that Evans confessed orally to him that Evans and the petitioner had committed the armed robbery. The United States Court of Appeals for the Eighth Circuit affirmed the petitioner's conviction because the trial judge instructed the jury that Evans' confession was inadmissible hearsay against the petitioner and therefore had to be disregarded in determining the petitioner's guilt or innocence.

The Supreme Court, however, disagreed and reversed the petitioner's conviction. The Court began by noting that "Evans' confession added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination, since Evans did not take the stand." 391 U.S. at 128, 88 S.Ct. at 1623. The *Bruton* Court, therefore, concluded that the petitioner had been denied his constitutional right to confront the witness. Reasoning that limiting instructions were not an adequate substitute for the constitutional right of cross-examination, the Court concluded further that the petitioner's Sixth Amendment confrontation rights were violated despite the trial court's limiting instruction. *Id.* at 127, 88 S.Ct. at 1623.

The determinant issue in *Bruton* was the use of a limiting instruction to prevent prejudice to the defendant where a codefendant's confession is admitted at a joint trial. Therefore, no *Bruton* problem arises in the instant case because the appellant and Reed were tried separately.

6. The *Lee* Court's "indicia of reliability" test is derived from the Supreme Court's decision in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In *Ohio v. Roberts*, the Court stated:

When a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Id.* at 66, 100 S.Ct. at 2539.

In this regard we reject the appellee's argument that Reed's confession was admissible under West Virginia Rule of Evidence 804(b)(3), the "statement against interest" exception to the rule against hearsay. Rule 804(b)(3) provides:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \* \* \*

(3) A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable person in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

In *Lee* the Supreme Court rejected the respondent's categorization of the accomplice's confession as a "statement against penal interest," stating that "[t]hat concept defines too large a class for meaningful confrontation analysis." 476 U.S. at 544 n. 5, 106 S.Ct. at 2064 n. 5.

We view the question of whether a confession made by an accomplice was "against his penal interest" as one of the factors to be considered

■ Accordingly, we conclude that a confession of an accomplice which inculpates the accused is presumptively unreliable. Where the accomplice is unavailable for cross-examination, the admission of the confession, absent sufficient independent "indicia of reliability" to rebut the presumption of unreliability, violates the Sixth Amendment right of confrontation.

■ In the instant case, the appellant was charged as an accessory before the fact to the crime of which Reed, her alleged accomplice, had already been convicted. At trial, when Reed took the stand and refused to answer questions, the prosecution read, in the presence of the jury, the confession Reed made to the police which implicated the appellant. As in *Lee* and *Douglas*, the appellant's conviction was supported by the uncross-examined confession of an accomplice. We therefore hold that Reed's confession was presumptively unreliable. Absent a showing of sufficient independent indicia of reliability to rebut that presumption, the admission of such uncross-examined evidence violated the appellant's Sixth Amendment right of confrontation.[7]

In *Lee* the Supreme Court examined the circumstances surrounding the accomplice's confession to determine whether his statement concerning the petitioner's involvement in the crime was sufficiently reliable. The Court observed first that the accomplice confessed in response to questions from the police only after he was told that the petitioner had already implicated him and asked him not to let her take the rap alone. 476 U.S. at 544, 106 S.Ct. at 2064. Second, the Court noted that the accomplice had considered becoming a witness for the State against the petitioner and therefore had an added incentive to distort the facts. *Id.*[8] Based on these circumstances the Court concluded that the confession did not bear sufficient independent indicia of reliability and concluded that the petitioner's Sixth Amendment right of confrontation had been violated.

In the case before us the record does not indicate the circumstances surrounding Reed's confession. We therefore decline to decide whether sufficient independent indicia of reliability existed to rebut the presumption of unreliability surrounding Reed's confession. On remand the parties will have an opportunity to present evidence on the issue of reliability.[9]

## II.

The appellant also assigns as error the admission of Russell Reed's conviction for the murder of Rusty Candler. At trial the State called the clerk of the Circuit Court of Wyoming County who testified that Russell Reed, the appellant's alleged accomplice, had been convicted by entering a plea

by a trial court in determining the reliability of that confession. *See infra* note 10. We, however, note that "a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest. Fed.R.Evid. 804(b)(3) advisory committee's notes. *See generally* Note, *Inculpatory Statements Against Penal Interest and the Confrontation Clause*, 83 Colum.L.Rev. 159 (1983).

7. We, however, add that "[c]onfrontation errors, though constitutional violations, do not automatically warrant reversal." *People v. Johnson*, 116 Ill.2d 13, 106 Ill.Dec. 763, 776, 506 N.E.2d 563, 576 (1987). Rather, confrontation clause violations are subject to a harmless error analysis. *See Lee v. Illinois*, 476 U.S. at 547, 106 S.Ct. at 2066; *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

8. The Court added that while the confession was found to be voluntary for Fifth Amendment

purposes, "such a finding does not bear on the question of whether the confession was also free from any desire, motive or impulse [the accomplice] may have had either to mitigate the appearance of his own culpability by spreading the blame or to overstate [the petitioner's] involvement for having implicated him in the murders." 476 U.S. at 544, 106 S.Ct. at 2064.

9. Among the factors the trial court should consider in determining reliability are whether the statement was spontaneous or a result of custodial police questioning, whether the statement was thoroughly and unambiguously adverse to the accused's penal interest, and whether the statement was corroborated by other evidence presented at trial, including the physical evidence. *See Lee v. Illinois*, 476 U.S. at 551, 106 S.Ct. at 2067 (Blackmun, J., dissenting); *State v. Hoskinson*, 48 Wash.App. 66, 737 P.2d 1041, 1045 (1987).

of guilty of the first degree murder of Rusty Candler.

■ It is well-settled that a guilty plea of an accomplice is inadmissible as evidence of the defendant's guilt. *See, e.g., State v. Padgett,* 410 N.W.2d 143, 146 (N.D.1987); *State v. Caudill,* 170 W.Va. 74, 289 S.E.2d 748, 755 (1982). However, if an accomplice testifies, evidence that the accomplice has pleaded guilty is admissible, not as evidence of the defendant's guilt, but as evidence relevant to the credibility of the accomplice's testimony. *See* syl.pt. 3, *State v. Caudill,* 170 W.Va. 74, 289 S.E.2d 748 (1982). Generally the testimony of an accomplice called as a witness by the State provides the jury with information concerning events surrounding the crime, his involvement in the crime, as well as the defendant's participation in the crime. *See, e.g., State v. Caudill,* 170 W.Va. 74, 289 S.E.2d 748 (1982). In this situation evidence that the accomplice has entered a plea of guilty to the crime aids the jury in determining the credibility of the accomplice's testimony. The trial court, however, must instruct the jury that they may consider the guilty plea only for the purpose of weighing the credibility of the accomplice's testimony and not as evidence of the defendant's guilt. *See* syl.pt. 1, *State v. Caudill,* 170 W.Va. 74, 289 S.E.2d 748 (1982).

■ In the instant case, however, Reed, in reliance on the Fifth Amendment privilege against self-incrimination, did not testify. His credibility, therefore, was not at issue. Consequently, the admission of Reed's guilty plea served only as an attempt to show the appellant's guilt by association. Thus, we conclude that the admission of Reed's guilty plea was error. *See State v. Caudill,* 170 W.Va. 74, 289 S.E.2d 748, 755 (1982) (guilty plea of accomplice cannot be used to show guilt by association).

For the foregoing reasons, we reverse the judgment of the Circuit Court of Wyoming County and remand for a new trial.

Reversed and remanded.