# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 17-1040** (Jefferson County CC-19-2017-F-13)

**Rakeem Deqwan Newman,**
**Defendant Below, Petitioner**

**FILED**

**June 7, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Rakeem Deqwan Newman, along with three other individuals, met brothers Dylan and Ryan Mumaw in July of 2016, under the pretext that Mr. Newman and the others would purchase a pound of marijuana from the Mumaws.[1] Upon meeting, the parties abandoned the appointed place, and Mr. Newman's party redirected the Mumaws to an unplanned location. Eventually, the Ford Focus in which Mr. Newman was a passenger pulled next to the Mumaws' Toyota 4Runner on a public street, near a park, in mid-afternoon. Mr. Newman and one of his companions exited their car, went to either side of the Mumaw vehicle that Dylan drove, and pointed guns at the Mumaws. Dylan attempted to pull away, and the masked person standing next to the Mumaws' passenger side discharged his gun. Dylan drove from the gunfire as the shooter continued to fire at the Mumaw car. Dylan saw that Ryan was shot in the chest and pulled the car alongside the road. Good Samaritans aided Ryan and called paramedics, but Ryan Mumaw died before his brother reached the hospital to meet him.

A witness recognized the driver of the Ford Focus that ambushed the Mumaws, and the juvenile driver quickly learned that officers were searching for him. By the following day, the juvenile and at least one other of the remaining two accomplices had appeared at a local police station. The juvenile entered into a plea agreement with the State. The State indicted Mr. Newman along with the other two men, Malakye Boyd (Mr. Newman's brother) and Tayjuhn Coble. Mr. Coble entered into a plea agreement, and Mr. Newman and Mr. Boyd were tried jointly and found guilty of felony murder in the first-degree, in violation of West Virginia Code § 61-2-1, and conspiracy to commit robbery in the first-degree, in violation of West Virginia Code § 61-10-31. Consequently, Mr. Newman, the petitioner in this appeal, is serving a term of life imprisonment, without mercy, in the West Virginia State Penitentiary for his role in the felony murder, and is subject to a consecutive five-year term of imprisonment for his role in the conspiracy.

On appeal to this Court, Mr. Newman asserts three assignments of error: that the circuit court erred in not directing a verdict in his favor, that the circuit court erred in denying his motion

---

[1] The individuals accompanying Mr. Newman were Tayjuhn Coble, Mr. Newman's brother Malakye Boyd, and a juvenile. Their roles are further described in the body of this decision.

1

for a new trial, and that the circuit court erred in permitting the State's use of recordings of telephone calls that were made while he and his accomplice were in the State's custody.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.[2]

**I.**

With respect to his first assignment of error, Mr. Newman states, without citation to the appendix record on appeal, that he "made a motion for a directed verdict at the close of the State's case and renewed that motion at the conclusion of the case."[3] The State does not dispute that the motion was made.

The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence. *See State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996). This Court has explained:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

Moreover,

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury

---

[2] Mr. Newman is represented by James T. Kratovil, and the State is represented by Patrick Morrisey and Caleb A. Ellis.

[3] We remind counsel that, pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, the argument section of the petitioner's brief "must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal." (Emphasis added.)

might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, syl. pt. 3, in part. Mindful of these imperatives, we consider whether the evidence presented at trial supports Mr. Newman's convictions of conspiracy to commit robbery in the first degree and felony murder.

Mr. Newman was found guilty of conspiring to commit robbery. The oft-repeated criteria for a conspiracy conviction are settled:

"""In order for the State to prove a conspiracy under W.Va.Code, 61-10-31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." Syl. Pt. 4, *State v. Less*, 170 W.Va. 259, 294 S.E.2d 62 (1981).' Syl. Pt. 3, *State v. Burd*, 187 W.Va. 415, 419 S.E.2d 676 (1991)." Syllabus point 5, *State v. Minigh*, 224 W.Va. 112, 680 S.E.2d 127 (2009).

Syl. Pt. 10, *State v. White*, 228 W. Va. 530, 722 S.E.2d 566 (2011). In this case, the offense at the heart of the conspiracy is robbery, a crime prohibited by West Virginia Code § 61-2-12, but still recognized by the common law definition. "At common law, the definition of robbery was (1) the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods." Syl. Pt.1, *State v. Harless*, 168 W. Va. 707, 285 S.E.2d 461 (1981).

The State also obtained a conviction through the theory of felony murder, based on Mr. Newman's participation in a crime that led to Ryan Mumaw's death. The State, therefore, was not required to establish that Mr. Newman fired the murderous shot.

"'[T]he elements which the State is required to prove to obtain a conviction of felony murder are: (1) the commission of, or attempt to commit, one or more of the enumerated felonies; (2) the defendant's participation in such commission or attempt; and (3) the death of the victim as a result of injuries received during the course of such commission or attempt.' *State v. Williams*, 172 W.Va. 295, [310,] 305 S.E.2d 251, 267 (1983)." Syllabus Point 5, *State v. Mayle*, 178 W.Va. 26, 357 S.E.2d 219 (1987).

Syl. Pt. 5, *Flack v. Ballard*, 239 W. Va. 566, 803 S.E.2d 536 (2017).

That Ryan Mumaw was murdered in the commission of a predicate felony—first-degree robbery—is undisputed. Mr. Newman's challenge attacks the evidence addressing his participation, and is grounded in his assertion "that the witnesses who testified against [him] had gotten themselves a deal and that they were trying to fulfil[l] their promises to the State." Mr.

Newman argues that he simply "thought they were going out for a ride and [to] smoke marijuana[,]" and that he was ignorant of the scheme to rob the Mumaws. He assigns authorship of the robbery to the juvenile and Mr. Coble. The juvenile and Mr. Coble, in contrast, testified that the robbery plan originated with Mr. Newman. On appeal, Mr. Newman characterizes the testimony of his co-conspirators as inherently unreliable based on asserted inconsistencies in their statements and testimonies.[4]

Justice intuits that "[a] confession of an accomplice which inculpates the accused is presumptively unreliable." Syl. Pt. 2, in part, *State v. Mullens*, 179 W. Va. 567, 371 S.E.2d 64 (1988). It does not follow, however, that a co-conspirator's testimony must be excluded. Rather, the abhorrence materializes when an out-of-court statement is admitted despite the absence of

---

[4] Mr. Newman's analysis of the challenged testimony is conclusory. He asserts, for example, that the juvenile at trial "agreed that he gave two statements that varied significantly to the point that he changed his mind on who got out of the car" and that the juvenile "gave three completely different statements." His citation to the appendix record on appeal does not support this conclusion or identify a fatal inconsistency. It reads:

> Q: You didn't testify to that yesterday; did you?
>
> A: I did.
>
> Q: Oh, you did?
>
> A: Yes, sir.
>
> Q: Then I'm sorry I don't remember that. Did [Mr. Newman] have anything in his hand when he got out of the vehicle?
>
> A: No, sir.
>
> Q: So we've got these three we'll call them extremely different stories and then we got these text messages that when you were back at [Mr. Coble's] house and I was interested in what took so long between the time that, I guess, it's Ryan texted you and you testified back it took 14 minutes. Do you remember that big long delay [?]
>
> A: I'm not sure exactly what you're talking about, no.

This passage is insufficient to alert us to any inconsistency in the narrative that would suggest injustice. Similarly, Mr. Newman asserts the juvenile admitted on cross-examination that, after giving his initial statement to the police, he reconsidered which of his passengers got out of the car to flank the Mumaw vehicle immediately prior to the shooting. Our review of the appendix record on appeal shows that the juvenile was subjected to thorough cross-examination on this point and others.

4

"sufficient independent 'indicia of reliability.'" *Id*. But in this case, the State did not rely on uncorroborated, out-of-court statements. The juvenile and Mr. Coble each offered testimonial evidence at trial and were subjected to rigorous cross-examination. In this regard, we find *State v. Ladd*, 210 W.Va. 413, 557 S.E.2d 820 (2001), analogous. We described that challenge as follows:

> The defendant contends, however, that the testimony of [the co-conspirators] is not credible because they both received plea bargains and their testimony was contradictory. We do not believe that these facts alone render their testimony insufficient to support the verdict as a matter of law. The plea bargains were revealed to the jury, and defense counsel cross-examined [the witnesses] at length and brought out the discrepancies in their testimony.[5] Our rule says that credibility determinations are for the jury and not an appellate court. *See* Syllabus Point 3, *State v. Guthrie*, [194 W. Va. 657, 461 S.E.2d 163 (1995).] The jury obviously viewed all of the testimony and evidence and chose to believe the testimony of [the co-conspirators] over that of the defendant. Accordingly, we find that the defendant's assignment of error based on insufficiency of the evidence is meritless.

210 W. Va. at 425, 557 S.E.2d at 832. (Footnote added.)

The jury determination is paramount, and we will not set it aside under the circumstances presented to us. Both Mr. Coble and the juvenile testified that Mr. Newman suggested that the foursome convert the scheduled drug transaction into a robbery. Both also testified that Mr. Newman was one of the two men who jumped from their car to hold the Mumaws at gunpoint. This evidence is sufficient to support Mr. Newman's criminal conviction of both conspiracy to commit robbery and the resultant felony murder. We find no error.

---

[5] We have explained this process as follows:

> An accomplice who has entered a plea of guilty to the same crime charged against the defendant may testify as a witness on behalf of the State. However, if the jury learns of the accomplice's guilty plea, then upon the motion of the defendant, the trial court must instruct the jury that the accomplice's plea of guilty cannot be considered as proving the guilt of the defendant, and may only be considered for proper evidentiary purposes such as to impeach trial testimony or to reflect on a witness' credibility. The failure of the trial court, upon request, to give such a limiting jury instruction is reversible error. To the extent that Syllabus Point 3 of *State v. Caudill*, 170 W.Va. 74, 289 S.E.2d 748 (1982) is inconsistent, it is hereby modified.

Syl., *State v. Flack*, 232 W. Va. 708, 753 S.E.2d 761 (2013). Mr. Newman has neither referred to a request for such an instruction, nor demonstrated or complained of the absence of such an instruction. We thus need not consider the impact of the plea agreements or the possibility of the jurors' knowledge thereof.

## II.

In support of his second assignment of error, asserting that the circuit court erred in denying his motion for a new trial, Mr. Newman summarily relies on his argument challenging the denial of his motion for a judgment of acquittal, as described above. For the reasons we found no error in that denial, we likewise find no error in the denial of the motion for a new trial.[6]

## III.

Finally, we turn to the third assignment of error, in which Mr. Newman asserts that the circuit court erred in permitting the State's use of recordings of telephone calls that were made while he or his accomplices were in the State's custody and awaiting trial. Our standard of review is well-settled: "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

Mr. Newman does not describe the telephone call recordings that he challenges with specificity.[7] The only detail he offers is that "[t]wo calls were offered against [him]. One to his

---

[6] We apply the following standard when reviewing a circuit court's order denying a motion for new trial:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

[7] In fact, Mr. Newman argues that we cannot know the content of the recordings or the subject of the many telephone calls: "Without a transcript it is impossible for the court to review the calls themselves or the context in which the calls were made." To the contrary, our system has developed a failsafe so that our review need not be undertaken in ignorance:

> "If a party offers evidence to which an objection is sustained, that party, in order to preserve the rejection of the evidence as error on appeal, must place the rejected evidence on the record or disclose what the evidence would have shown, and the failure to do so prevents an appellate court from reviewing the matter on appeal." Syl. Pt. 1, *Horton v. Horton*, 164 W.Va. 358, 264 S.E.2d 160 (1980).

Syl. Pt. 10, *State v. McIntosh*, 207 W. Va. 561, 534 S.E.2d 757 (2000). Mr. Newman asserts that he asked the circuit court to admit the entirety of the recording catalog, and that the court, in error, declined. In the absence of voucher, we will not speculate.

mother and one to his girlfriend."[8] We thus understand that the basis of his challenge is not substantive, but rather is based on his perception that the State's production was burdensome. The essence of his argument is that the State identified more than 1,500 recorded telephone calls as potential evidence, but provided defense counsel only the recordings when it should have created transcripts of the recordings.[9] In addition, Mr. Newman suggests that when the State offers a recording of a telephone call, it must offer all available recordings to establish context. We disagree with both notions.

With respect to both aspects of his argument, Mr. Newman fails to assert how the circuit court erred in its treatment of the recordings, except to state that "a review of the 400 series of the Rules of Evidence should be used in determining whether or not the jail calls should have been admitted." The "400 series" guides the circuit court's consideration of "relevant evidence." In particular, Rule 401 instructs that evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Inasmuch as Mr. Newman failed to describe the content of the recordings, we are unable to evaluate the evidence within the relevancy parameters suggested by Mr. Newman. In light of the representation that only four recordings of a potential 1,500 recordings were admitted into evidence, we are left with an unassailable presumption that the circuit court adequately performed its duty. Furthermore, Mr. Newman's complaints do not ascribe to the rules of relevancy. Rather, he seems to implicate—without the appropriate nod to the controlling rules—the "best evidence" rule and the "rule of completeness."

Rule 1002 of the West Virginia Rules of Evidence, commonly termed the "best evidence" rule, provides that "[a]n original writing, recording, or photograph is required in order to prove the

_____

[8] Mr. Newman asserts that the State offered four recordings, including the two mentioned in his brief. His citation to the appendix record on appeal, however, leads to discussion concerning a single telephone call that Tayjuhn Coble initiated with another party, possibly his mother, who then established a multi-line call with a third-party who was in the presence of Malakye Boyd. The State's attorney represented to the circuit court that, in the course of that conversation, "Mr. Coble says I'm here on your charges and Mr. Boyd says I love you. I love you. I'm going to be in there Monday. I'm going to come in there and, you know, does not dispute what Mr. Coble says about being locked up."

[9] We note that the circuit court granted, by order entered on May 11, 2017, Mr. Newman's motion to hire law school students to review the recordings. At the pretrial hearing conducted on August 3, 2017, the circuit court asked counsel, "[H]ave you had a chance to review the [seven telephone calls identified by the State] on the 28th, the calls that pertain to your client?" and counsel responded, "I don't think specifically." According to the circuit court's order approving the payment of counsel's fees and expenses, entered on January 29, 2018, counsel submitted expense reports for three students, including his son, for more than 392 hours of work in reviewing the recordings, at a rate of $20 per hour, for a total approximate expense of about $7,840. The work was reported to have been primarily completed in the months of May and June of 2017. The circuit court thus adequately ensured that Mr. Newman suffered no prejudice through unfair surprise.

content unless these rules or a state statute provides otherwise." We have clarified the application of this rule to recordings:

> "Audio and video tape recording transcripts are demonstrative aids for the understanding of evidence; they should be so marked and identified; and the court should instruct the jury regarding the purpose and limited use of the transcripts." Syllabus point 3, *State v. Hardesty*, 194 W.Va. 732, 461 S.E.2d 478 (1995).

Syl. Pt. 2, in part, *State v. Swims*, 212 W. Va. 263, 569 S.E.2d 784 (2002). Should the State have offered evidence of the telephone calls, it was required to do so in the form of the original recording. As explained in *Swims*, the State was permitted to prepare transcripts for the limited purpose of aiding the jury, but it was under no obligation to do so. The logical extension of *Swims* is that where the State was not required to prepare transcripts to aid the jury, it also was not required to prepare transcripts to aid Mr. Newman. There is no dispute that the State provided counsel with the best evidence, and there is no error related to the State's pretrial production of the recordings.

Rule 106 of the West Virginia Rules of Evidence, our expression of the common law "rule of completeness," provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may request the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." This rule has proven adequate to ensure that evidence is presented in context, and we decline to broaden it into absurdity.[10] There is no evidence before us that Mr. Newman—here the "adverse party" to the evidentiary submission—moved for the admission of any portion of the related recordings. We thus find no error in the admission of the limited quantity of the recordings of telephone calls involving Mr. Newman or his co-defendants.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 7, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[10] Similarly, we decline to chill the exchange of discovery by suggesting that a party has overproduced. Our circuit courts are well-equipped to address abuse of process when such a charge is asserted. In the case before us, there is no indication that the State burdened Mr. Newman with a greater amount of evidence than it reviewed itself.