**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 21-0356** (Summers County No. 19-5-18)

**Anthony Devaughan Johnson,**
**Defendant Below, Petitioner**

# MEMORANDUM DECISION

Petitioner Anthony Devaughan Johnson appeals the Circuit Court of Summers County's April 26, 2021, order denying his motion for a new trial following his conviction for first degree murder.[1]

A grand jury indicted petitioner for the murder of Thomas Theodore Sanford ("decedent"). A State Police trooper testified before a grand jury that, in 2019, he responded to a call at a trailer belonging to Mike Yancey and his adult son, Jay, where he found decedent's body with a gunshot wound to the chest. The evidence showed that Mike and Jay were drug addicts and that the decedent was their drug dealer. Mike Yancey claimed that, at the trailer, a man named "Anthony" or "Ant" argued with decedent over money, shot decedent in the side, and decedent fell to the floor. A drug task force identified "Ant" as petitioner Anthony Devaughan Johnson. The trooper later located petitioner with a traveling companion, Marshell Pope, in a nearby hotel. Pope told the trooper that she had been with petitioner at the Yanceys' trailer where she heard a gunshot, saw petitioner emerge from the room where the gunshot emanated, and heard petitioner say, "Don't mess with my f—king money." The trooper testified that sweatpants found in the hotel room tested positive for gunshot residue and decedent's blood.

The State moved to use Pope's recorded statements to law enforcement officers at petitioner's trial, claiming that Pope could not be located because petitioner induced Pope to be unavailable for trial. The State produced recorded jail-based calls from petitioner to Pope in which he told her to "go the f—k home," "stay the f—k gone," "they can't lock you up" or "make you testify," and "no face no case." On that record, the court granted the State's motion to admit Pope's recorded statements.

---

[1] Petitioner appears by counsel, Robert P. Dunlap, II; the State appears by counsel Patrick Morrisey and Lara K. Bissett.

On March 25, 2021, petitioner filed a "Notice of Required Cancellation" of trial asserting that "additional discovery issues" made the April 5, 2021, trial date "untenable." The State objected to any continuance, noting that the "discovery issues" resulted from petitioner's claim of self-defense one week before trial and prompted the State to send pieces of decedent's clothing to the crime lab for analysis. The circuit court denied petitioner's motion.

On March 30, 2021, petitioner moved to disqualify the Summers County Prosecuting Attorney's Office, which was prosecuting his case, after the State advised petitioner that calls between petitioner and his counsel had been recorded by the facility in which petitioner was incarcerated and accidentally heard by one of the prosecutor's staff members. The circuit court denied petitioner's motion, finding that "all [previously] undisclosed material evidence in the recorded telephone calls shall be deemed inadmissible at trial" and that the staff member who heard the conversations had been "'Chinese walled' . . . from any and all matters related to the prosecution of this case." Thereafter, petitioner made a motion in limine regarding the State's proposed use of a call recorded on decedent's cell phone that contained the voices of two unknown persons, one of which was later determined to be James Malcomb. The court denied that motion.

Petitioner's five-day trial commenced April 5, 2021. A jury found petitioner guilty of first-degree murder and did not recommend mercy. On April 12, 2021, the circuit court sentenced petitioner to life in prison without the possibility of parole. Petitioner then filed a motion for a new trial citing the court's (1) failure to disqualify the prosecutor; (2) decision to allow Malcomb's testimony at trial; and (3) placement of decedent's family in the courtroom near the jury. The court denied petitioner's new trial motion on April 26, 2021.

Petitioner now appeals and raises seven assignments of error. Petitioner first argues that the circuit court erred in allowing the State to present Pope's recorded statements to law enforcement officers at his trial in violation of his constitutional right of confrontation. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" That confrontational right "includes the right of cross-examination." Syl. Pt. 1, in part, *State v. Mullins*, 179 W. Va. 567, 371 S.E.2d 64 (1988). However, "[u]nder the doctrine of forfeiture, an accused who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." Syl. Pt. 11, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006), *holding modified by State v. Jako*, 245 W. Va. 625, 862 S.E.2d 474 (2021). "Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." Syl. Pt. 2, in part, *State v. Peyatt*, 173 W. Va. 317, 315 S.E.2d 574 (1983). Here, the circuit court found that during petitioner's recorded jail-based calls with Pope, he repeatedly urged her to leave West Virginia. The court concluded that "a preponderance of the evidence shows that [petitioner] wrongfully and intentionally convinced Pope to make herself unavailable to both the State and [petitioner]." "'[A]ny significant interference' with the declarant's appearance as a witness, including the exercise of 'persuasion and control' or an instruction to invoke the Fifth Amendment privilege, amounts to wrongdoing that forfeits the defendant's right to confront the declarant." *United States v. Gray*, 405 F.3d 227, 242 (4th 2005) (quoting *Steele v. Taylor*, 684 F.2d 1193, 1201 (6th Cir. 1982)). Accordingly, we find no error.

In petitioner's second assignment of error, he argues that the circuit court should have dismissed his indictment based on "false grand jury testimony," which violated his due process rights. Specifically, petitioner claims the trooper who testified before the grand jury wrongfully testified that (1) Mike Yancey cooperated with the police even though the trooper knew that the Yanceys removed drug paraphernalia and weapons from their home before calling the police about decedent's death; (2) decedent suffered for a period of time before he died even though Mike Yancey later testified at trial that decedent died instantly; (3) petitioner refused to speak to law enforcement even though he gave three statements to law enforcement upon his arrest; (4) Pope said she did not know the Yanceys even though she had stayed at the Yancey's home previously and provided home health care to Mike Yancey. Petitioner also claims that the trooper provided contradictory testimony regarding gunshot residue on the decedent's hands and wrongfully portrayed petitioner as a violent, big-city drug dealer.

"'Except for willful, intentional fraud[,] the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency.' Syl., *Barber v. Fox*, 160 W. Va. 749, 238 S.E.2d 235 (1977)." Syl. Pt. 2, *State ex rel. Pinson v. Maynard*, 181 W. Va. 662, 383 S.E.2d 844 (1989). Here, the grand jury transcript shows that any inconsistencies or misstatements made by the trooper during his testimony were inconsequential, did not pertain to petitioner's alleged crime, and were subject to cross-examination at trial. Further, petitioner fails to show that the State committed "willful, intentional fraud." Thus, we reject this assignment of error.

In petitioner's third assignment of error, he contends that the circuit court abused its discretion in denying his motion to disqualify the Summers County Prosecutor Attorney's Office after one of the prosecutor's staff heard recorded phone calls obtained from the Division of Corrections between petitioner and his counsel. We find no error. When the prosecutor learned the staff member accidentally heard recordings of petitioner's jail-based phone calls with his counsel, the prosecutor walled off the staff member from petitioner's case. As petitioner does not claim anyone else heard the calls, there was no reason for the circuit court to disqualify the prosecutor or his or her staff. Thus, we find no error.

In petitioner's fourth assignment of error, he argues that the circuit court abused its discretion when it denied petitioner's motion for a new trial relating to the juror's seating arrangements. He also claimed that by seating decedent's family members near the jurors' entrance and exit points in the courtroom, his constitutional rights were violated. "A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion." Syl. Pt. 2, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000) (citations omitted). The record shows that, due to the Covid-19 pandemic, the trial court seated the participants around the courtroom so they were all six feet apart. Thus, jurors were seated in the gallery as opposed to the jury box. The court also limited the number of visitors in the gallery to six, all of whom were decedent's family members. Due to the visitors' location, the jurors had to pass by them to access the jury room. Petitioner, his counsel, and a paralegal claim that, during trial, they saw one juror nod to the visitors. Petitioner also claims that, following the verdict, several jurors nodded affirmatively toward the visitors who thanked them with "raised hands praising God." In response, petitioner filed a motion for a new trial which the circuit court denied. Petitioner claims that ruling

was an abuse of discretion. However, petitioner offers nothing to establish that the jury was improperly influenced by its proximity to decedent's family. Moreover, petitioner admits that he and his counsel were unaware of any interactions between the jurors and decedent's family until after the verdict had been announced. Thus, we find no error.

In petitioner's fifth assignment of error, he argues that the circuit court erred in allowing the State to make prejudicial statements on opening and closing that violated his constitutional rights. Those statements included the State's claim that petitioner was a "plague" who "deliver[ed] the poison in your community" for "his own personal and selfish profit and gain." Petitioner admits that he did not object to these statements at trial. Therefore, we review this claim for plain error. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syl. Pt. 6, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995). A conviction will not be set aside due to improper remarks in the presence of a jury which do not clearly prejudice a defendant or result in manifest injustice. *State v. Beckett*, 172 W. Va. 817, 310 S.E.2d 883 (1983). Here, the State's theory of the case was that petitioner murdered the decedent because the decedent failed to pay petitioner for the drugs petitioner delivered to him. Applying these factors, we find that the State's remarks regarding drug deliveries or sales were neither misleading nor did they divert the jury's attention to extraneous matters. Thus, petitioner fails to show plain error.

Also in his fifth assignment of error, petitioner argues that the circuit court improperly commented during his expert's testimony when his counsel asked the expert if "it was possible for a right-handed person holding a handgun, colliding with another person face to face for that firearm to discharge and create the injury you saw in the evidence?" The State objected, claiming that because the firearm was not identified, the witness could not answer the question. In response, the court mentioned an earlier case in which law enforcement wrongfully believed that a victim who had been shot by another had attempted suicide with a gun. Petitioner contends that the court's comments confused the jury because his case did not regard a suicide. Syllabus Point 3 of *State v. Thompson*, 220 W. Va. 398, 647 S.E.2d 834 (2007), provides:

> Where a defendant on appeal in a criminal case asserts that a trial court's questioning of witnesses and comments prejudiced the defendant's right to present evidence and jeopardized the impartiality of the jury, this Court upon review will evaluate the entire record to determine whether the conduct of the trial has been such that jurors have been impressed with the trial judge's partiality to one side to the point that the judge's partiality became a factor in the determination of the jury so that the defendant did not receive a fair trial.

4

Petitioner fails to explain the context of the court's remark, namely that petitioner's counsel, who was questioning a forensic expert on a hypothetical scenario, drew repeated objections from the State that the question called for speculation. The circuit court's comment sought to explain to petitioner's counsel the difference between speculation and reasonable belief by mentioning an unrelated case regarding an alleged suicide. The court's comments did not demonstrate partiality to the State or intimate any opinion about the quality of petitioner's evidence or the credibility of his expert witness. Indeed, petitioner's counsel did not object to the court's comments. Moreover, following the court's comments, petitioner's counsel took the court's cue and rephrased his question without objection from the State. Accordingly, we find no merit to petitioner's fifth assignment of error.

In petitioner's sixth assignment of error, he first argues that the circuit court abused its discretion in allowing James Malcomb to testify at petitioner's trial where Malcomb was not disclosed as a witness until four days before trial. Malcomb was slated to authenticate a threatening call found on decedent's cell phone. In objecting to Malcomb's proposed testimony, petitioner argued that he did not have time to investigate Malcomb's claims or defend against them due to their late disclosure. "The traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." Syl. Pt. 2, *State ex rel. Rusen v. Hill*, 193 W. Va. 133, 454 S.E.2d 427 (1994). Nondisclosure or late disclosure of evidence in violation of a discovery order is reversible error only where it is prejudicial. *See, e.g.*, *State v. Ward*, 168 W. Va. 385, 389, 284 S.E.2d 881, 884 (1981). Here, petitioner was not prejudiced by the late disclosure of Malcomb's testimony because it did not surprise him regarding a material fact or hamper his preparation for trial. The recording of the "threat call" found on decedent's phone was the subject of an earlier motion in limine filed by petitioner, and a transcript of the call formed the basis of the State's search for Malcomb. Thus, defense counsel knew the gist of what Malcomb might say if he was found and called to testify at trial given that Malcomb acknowledged hearing the recording of the call. This testimony was relevant to the State's theory of the case that petitioner killed decedent over drug money. Moreover, the record shows that petitioner's counsel robustly cross-examined Malcomb and repeatedly challenged his credibility. On this record, we find that the trial court did not err in allowing Malcomb's testimony at petitioner's trial.

Petitioner further argues that the circuit court abused its discretion in precluding his expert, Andrew Wheeler, from (1) enacting the stance of a bleeding person who would have deposited a particular blood spatter pattern; and (2) testifying about decedent's level of consciousness as it related to the blood spatter. "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syl. Pt. 6, *Helmick v. Potomac Edison Co.*, 185 W. Va. 269, 406 S.E.2d 700 (1991). Petitioner argues that the circuit court's rulings precluded evidence regarding his theory of the case, i.e., that decedent fell to his knees before lying flat on the floor. Petitioner does not explain why such evidence would have been relevant and fails to show how the testimony would have supported his theory of the case. Further, petitioner failed to qualify Wheeler as an expert in blood spatter. Accordingly, we find no error.

In petitioner's seventh and final assignment of error, he argues that the circuit court violated his due process rights in denying his "Notice of Required Cancellation" of the trial given that he learned in the weeks before trial about (1) the recorded jail calls between himself and his counsel that were heard by the prosecutor's staff member; (2) State's witness Malcomb; and (3) that the State decided to test the shirt decedent was wearing when he was shot and killed. Petitioner admits that he did not file a motion to continue and, instead, filed a "Notice of Required Cancellation" so any continuance would not be deemed to be a defense continuance. Petitioner argues that he did not have adequate time to properly investigate and resolve these issues. Therefore, he claims the circuit court abused its discretion in denying his "Notice of Required Cancellation."

Despite its title, petitioner's "Notice of Required Cancellation" was, in fact, a motion to continue his trial. "A motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion." Syl. Pt. 2, *State v. Bush*, 163 W. Va. 168, 255 S.E.2d 539 (1979). At a March 26, 2021, hearing on petitioner's "Notice of Required Cancellation," petitioner argued it was based solely on the State's decision to send additional evidence to the crime lab for testing. Petitioner did not argue that the notice was based on the recorded jail calls or on the disclosure of a new witness. The State objected to a continuance, highlighting that it was petitioner's notice of "self-defense," a scant week before trial, that forced the State to send decedent's clothing to the crime lab. Further, petitioner's counsel admitted that "[w]e can actually prepare for this trial adequately." Thus, the circuit court denied the "Notice of Required Cancellation." Nothing in the record shows that this decision was an abuse of the circuit court's discretion. Therefore, we find no abuse its discretion.

Accordingly, for the foregoing reasons, we affirm petitioner's conviction and the circuit court's denial of petitioner's motion for a new trial.

Affirmed.

**ISSUED:** October 17, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

6